UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
GREAT AMERICAN                          )
INSURANCE COMPANY, et al.,              )
                        Plaintiffs,     )
                                        )    Civil Action No. 04-12260-GAO
            v.                          )    [Consolidated Lead Case]
                                        )
RISO, INC.,                             )
                        Defendant.      )
_____)
                                        )
RISO, INC.,                             )
                        Plaintiff,      )
                                        )    Civil Action No. 04-12397-GAO
            v.                          )    [Consolidated into No. 04-12260-GAO]
                                        )
GREAT AMERICAN                          )
INSURANCE COMPANY, et al.,              )
                        Defendants.     )
_____)

MEMORANDUM AND ORDER
March 31, 2006

O'TOOLE, D.J.

        These consolidated civil actions involve an insurance coverage dispute.  In the first-filed case,

Civil Action No. 04-12260-GAO, the plaintiff insurers Great American Insurance Co., Great

American Alliance Insurance Co., Great American Assurance Co., and Great American Insurance Co.

of New York (collectively "GAIC") seek a declaratory judgment that they have no duty to defend

or indemnify the defendant insured, Riso, Inc. ("Riso"), in relation to a lawsuit filed against Riso in

federal court in California under various policies issued to Riso.  On the same day that GAIC filed

that action, Riso filed an action in the Massachusetts Superior Court seeking a declaratory judgment

that GAIC does have a duty to defend and indemnify as to that same California lawsuit and alleging

that GAIC breached the insurance contracts by refusing to do so.  GAIC removed that case here,

Civil Action No. 04-12397-GAO, and the two cases were consolidated by agreement of the parties.

Pending before the court are the parties' cross-motions for summary judgment.  For the

reasons set forth herein, I conclude that GAIC did not have a duty to defend the underlying lawsuit

and thus judgment in GAIC's favor is appropriate in both actions.

### Factual Background

The following represents a summary of undisputed facts on the record.  The parties both agree

that this case is appropriate for summary judgment because the only disputes are as to matters of law,

specifically how to characterize the particular insurance policy provisions at issue and the nature of

the complaint in the underlying litigation that Riso argues invokes GAIC's coverage obligations.[1]

*The Parties and the Insurance Policies*

Riso, Inc. is a Massachusetts corporation that distributes "Riso" branded digital duplicating

machines  known  as  "Risographs,"  as  well  as  parts  and  supplies – like  inks  and  masters  that  are

---

[1] Under Massachusetts law governing duty to defend disputes, an insured may argue that facts outside the underlying complaint that were known or reasonably knowable to the insurer at the time the demand for coverage was made, when considered in conjunction with that complaint, help demonstrate that a duty to defend arose.  See Open Software Found., Inc. v. U.S. Fid. and Guar. Co., 307 F.3d 11, 15-16 (1st Cir. 2002); Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1158 (Mass. 1989).  Here, however, Riso has argued that the duty to defend arose solely by virtue of the complaint in the underlying action, without reference to any extrinsic facts known to GAIC.  Additionally, in its briefing, Riso cites statements purporting to characterize the nature of the complaint in the underlying action in (1) a memorandum jointly prepared by Riso and the underlying plaintiffs and submitted to the court seeking dismissal of the purported class action after the parties had negotiated a settlement and (2) a memorandum and order of the district court in the underlying action approving dismissal of the action which by its own terms derives all facts referenced, including the characterization of the complaint Riso cites, from the parties' joint memorandum.  Riso has conceded that these statements have no preclusive effect on GAIC, a non-party to the underlying action.  Because Riso relies on the complaint in the underlying action itself as triggering GAIC's duty to defend, it is not necessary to look beyond the complaint in determining whether such a duty arose.

specially formulated for use in Riso machines – throughout the United States.  GAIC, through various entities, issued six primary commercial general liability policies ("primary policies") and six umbrella liability policies ("umbrella policies") that are the subject of the dispute here.  The policies each covered successive annual periods between 1994 and 2000.  These policies were issued to Riso in Massachusetts via insurance broker Marsh & McLennan.

As noted above, this dispute focuses on whether GAIC was obligated to defend a third party suit brought against Riso.  The only basis upon which Riso asserts that GAIC has a duty to defend is the policy's "personal injury" coverage.  Under the "Personal [and, in some cases, Advertising] Injury Liability" "Insuring Agreement," GAIC's duty to defend and indemnify is defined as follows: "We [GAIC] will pay those sums that the Insured [Riso] becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' [in the last policy year's version this was worded as 'personal and advertising injury'] to which this insurance applies.  We will have the right and duty to defend [in the last policy year's version the words 'the insured against' were added here] any 'suit' seeking those damages."[2]  All of the policies define "personal injury" as meaning, in relevant part, "injury . . . arising out of one or more of the following offenses."  The "offense" the parties agree is relevant here – because Riso claims it provides coverage – is "oral or written [in some policies 'oral, written, televised, videotaped, or electronic'] publication of material that slanders or

_____

[2] Although they are worded differently in different years, for the purposes relevant to this motion, the umbrella policies essentially provided that GAIC was obligated to pay sums in excess of underlying insurance or retained limit if Riso became "legally obligated to pay" as a result of, inter alia, "personal injury," as that term is defined in the policies.  The umbrella policies defined "personal injury" in the same way as the primary policies did.

libels a person or organization or disparages a person's or organization's goods, products, or services."[3]

### The Underlying Litigation

This coverage dispute stems from a 1999 lawsuit brought in the United States District Court for the Eastern District of California, *Modesto City Schools, et al. v. Riso Kagaku Corp, et al.*, Case No. CIV. S-99-2214. Two school districts located in California, Modesto City Schools and the Stockton Unified School District, brought a putative class action against Riso alleging, in general terms, that Riso had engaged in multiple unlawful restraints of trade in the retail markets for Risograph service and Risograph supplies as well as the retail market for items imported into the United States, all in violation of the Sherman Act and Wilson Tariff Act. They also alleged that Riso engaged in unfair methods of competition and unfair or deceptive practices alleged to violate the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. In support of their position that this suit is covered under the GAIC policies, Riso points to allegations in the complaint that Riso and its dealers purportedly executed their anti-competitive scheme by – among other coercive tactics and strategies – indiscriminately falsely disparaging Riso's competitors' inks and masters. Specifically, Riso is alleged to have placed warning stickers on its products telling customers to use only Riso manufactured supplies because non-Riso manufactured inks and masters could cause serious damage to the ink cylinder of the Risograph, a strategy the plaintiffs alleged bolstered the effect of the Riso

---

[3] Other defined "personal injury" offenses include (1) "false arrest, detention or imprisonment," (2) "malicious prosecution," (3) "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies [sometimes says 'committed'] by or on behalf of its owner, landlord or lessor;" (4) "oral or written [in some policies 'oral, written, televised, videotaped, or electronic'] publication of material that violates a person's right to privacy." In years when the policies included "advertising injury" within the ambit of "personal injury," other advertising "offenses" were also defined.

warranty and maintenance agreement requirements that purchasers use only "authorized" Riso supplies.  Riso is also alleged to have sent letters to its customers stating that Riso did not recommend the use of "non-genuine" supplies in any Risograph product. These actions are alleged to have been in support of Riso's wrongful "tying arrangement" under the antitrust laws between customers' warranties and Riso brand inks and masters, which itself is one of three types of wrongful antitrust conduct alleged in the action.

In response to requests for admissions propounded during discovery, Riso has admitted that: (1) the *Modesto* plaintiffs did not seek damages from Riso because of disparagement of the *Modesto* plaintiffs or of their goods, products, or services; (2) Riso did not pay any money in the settlement of the *Modesto* action to resolve claims for disparagement of the *Modesto* plaintiffs or of their goods, products, or services; (3) in the *Modesto* complaint, the *Modesto* plaintiffs did not allege that they or their goods, products, or services were individually or collectively disparaged by Riso and (4) in the *Modesto* complaint, the *Modesto* plaintiffs did not allege that Riso made any oral or written statements at all about any plaintiff.

***The Current Coverage Dispute***

At the outset of the *Modesto* suit, Riso informed GAIC of the lawsuit and requested that GAIC assume its duty to defend.  GAIC refused, arguing that the duty to defend was not invoked because the *Modesto* plaintiffs did not, and in fact could not, make any allegations that Riso had disparaged them or their products.  Thus, GAIC's position was and is that the personal injury offense which Riso claimed gave rise to coverage did not apply.  Riso defended the lawsuit itself at considerable expense until the suit was settled and then dismissed in November 2003.[4]

---

[4] In 1998, prior to the *Modesto* suit, Riso was sued by Western Duplicating, a competitor that sells ink and masters to owners of digital duplicators, including owners of Risographs.  In that lawsuit, Western Duplicating alleged that Riso and its dealers unlawfully conspired to exclude it from the

## Analysis

The interpretation of an insurance contract and the application of policy language to largely undisputed known facts represent questions of law that are particularly susceptible to summary judgment. See, e.g., Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 530 (Mass. 2003). The parties agree that the issues in this case are proper for summary judgment and that Massachusetts law on insurance policy interpretation applies. Under Massachusetts law, the interpretation of any insurance policy begins by looking to "the actual language of the policies, given its plain and ordinary meaning," considering "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." See Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000) (internal citations and quotations omitted). As a general rule, any ambiguities in an insurance policy are construed in favor of an insured. However, ambiguity only exists when a policy is susceptible to more than one rational interpretation, not solely because the parties disagree as to a particular provision's meaning. See id. at 4-5.

To determine whether an insurer has the initial duty to defend a third party action against the insured, the complaint in the underlying action is matched with the policy provisions to determine if

---

aftermarket for ink and masters in violation of the antitrust laws. In addition to alleging that Riso controlled its dealer network in such a way as to prevent them from selling non-Riso supplies, Western Duplicating also alleged that Riso and its dealer's disparaged its products in the minds of consumers by means of the warnings described above in *Modesto* and via the threat that use of non-Riso supplies would void customers' warranties. Western Duplicating also alleged that Riso made false and misleading statements about their products in violation of the Lanham Act and California law. Riso requested that GAIC defend the *Western Duplicating* lawsuit and GAIC did so. GAIC took the position that the duty to defend was invoked because the Western Duplicating plaintiffs, unlike the Modesto plaintiffs, had alleged that Riso had made disparaging statements about them or their products, and thus the disparagement personal injury offense at issue in this case was applicable to provide coverage.

the facts alleged in the complaint and those other facts known to the insurer at the time of the demand

for coverage are "reasonably susceptible of an interpretation that they state or adumbrate a claim

covered by the policy terms." <u>Sullivan</u>, 788 N.E.2d at 530.[5]  This process involves "envisaging what

kinds of losses may be proved as lying within the range of the allegations of the complaint, and then

seeing whether any such loss fits the expectation of protective insurance reasonably generated by the

terms of the policy." <u>Id.</u> at 530-31.  The underlying complaint need only show a possibility that the

liability claim falls within the coverage; there is no requirement that the complaint specifically and

unequivocally state a claim within the coverage.  <u>Id.</u> at 531.  In this sense, the duty to defend is

broader than and independent of the duty to indemnify.  <u>See id.</u>; <u>see also</u> <u>Brazas</u>, 220 F.3d at 4

(obligation to defend turns on the facts alleged in the complaint rather than the facts proven at trial).

Finally, while the duty to defend may be broad, an insurer has no duty to defend "when the allegations

in the underlying complaint lie expressly outside the policy coverage and its purpose." <u>Sullivan</u>, 788

N.E.2d at 531.

GAIC argues that the personal injury provision providing coverage for "injury . . . arising out

of . . . publication of material that . . . disparages a person's or organization's goods, products, or

services" should be read to require that the underlying litigation state or adumbrate a claim for the

tort of disparagement.  This reading would in turn require that the underlying plaintiff have made

allegations of disparagement of himself or his own goods, products, or services by the insured.  Riso

---

[5]  As I have previously stated, the proper meaning of the term "adumbrate" as used by the
Massachusetts Supreme Judicial Court in this context is "to give a sketchy representation of; outline
broadly, omitting details . . . or to suggest, indicate, or disclose partially and with a
purposeful avoidance of precision." <u>Open Software Found., Inc. v. U.S. Fid. & Guar. Co.</u>, Civ. A.
98-11177-GAO, 2001 WL 1298878, at *3 n.1 (D. Mass. Aug. 16, 2001) (internal quotations and
citations omitted).

argues that the policy language does not unambiguously limit coverage to the tort of disparagement and therefore the policy term must be given a common parlance meaning which would not equate the phrase "disparages a person's or organization's goods, products, or services" with the tort of disparagement. I conclude that GAIC's proffered construction represents what an objectively reasonable insured, reading the relevant policy language, would expect to be covered. Additionally, even if the policy language was not construed as limiting coverage solely to the tort of disparagement, Riso's proffered construction is implausible based on the policy language and not supported by the Massachusetts law. Thus, at a minimum, the underlying complaint must allege that the plaintiff was disparaged, in either the tort sense or the colloquial sense, by the insured.

A construction of the policy language that requires an underlying claim of the tort of disparagement is what an objectively reasonable insured, reading the policy, would expect to be covered and is consistent with First Circuit precedent regarding the duty to defend under personal injury coverage provisions. First, it is to be expected that legal terms will be understood in the manner in which they normally are used by courts. See Global NAPs, Inc. v. Fed. Ins. Co., 336 F.3d 59, 63 (1st Cir. 2003); Open Software Found. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 18 (1st Cir. 2002) (OSF II); Open Software Found. v. U.S. Fid. & Guar. Co., Civ. A. 98-11177-GAO, 2001 WL 1298878, at *7 (D. Mass. Aug. 16, 2001) (OSF I). Moreover, under the contract interpretation canon of *noscitur a sociis*, the meaning of a word is or may be known by the words accompanying or surrounding it. See OSF II, 307 F.3d at 19 ("we find it highly implausible to suppose that 'unfair competition' in a list of torts otherwise concerned mainly with harmful speech in various forms (defamation, invasion of the right to privacy, copyright infringement) would sweep under the policy a general, albeit only a prima facie, liability for antitrust damages and other causes of action not

8

constituted by communicative harms") (internal quotations and citations omitted).  The particular subclause within the list of personal injury offenses that Riso claims applies here includes as other defined offenses libel and slander, cousins to the tort of disparagement.  The other covered personal injury "offenses" listed are all commonly understood torts–such as malicious prosecution, wrongful eviction from or wrongful entry into the right of private occupancy, false arrest/false imprisonment, and publication of material that invades the right to privacy.  The tort of "disparagement" in the commercial setting generally covers the act of engaging in false communications which damage or tend to damage the reputation as to quality of another's goods or services.  See QSP Inc. v. Aetna Cas. and Sur. Co., 773 A.2d 906, 917-18  n.15 (Conn. 2001).  There appears to be some disagreement as to the label this general type of tortious conduct is given, courts having variously described the same type of wrong as "disparagement," "product disparagement," "trade libel," or "slander of goods."  Id.  Nonetheless, the general meaning remains the same and thus an objectively reasonable insured would understand the personal injury offense of "disparage[ment of] a person's or organization's goods, products, or services," when used in a commercial liability insurance policy, to cover torts that fall within this category of the commercial disparagement tort, however specifically defined under state law in the forum of the underlying action.  This interpretation also "best effectuates the main manifested design of the parties" in entering into the "personal injury" coverage provisions of this commercial general liability policy, which was to provide coverage to Riso for claims by individuals who alleged that they suffered personal harms as a result of actions by Riso in conducting its business activities.  See Metro. Prop. and Cas. Ins. Co. v. Fitchburg Mut. Ins. Co., 793 N.E.2d 1252, 1256 (Mass. App. Ct. 2003).

Other courts who have considered identical policy language to that at issue here and similar facts and argument – e.g. an insured arguing that the "disparages" language provides defense coverage for antitrust suits in which underlying plaintiffs only made allegations that the insured disparaged a third party – have adopted a construction analogous to that proffered by GAIC, holding that the definitional language "disparages . . . a person's or organization's goods, products, or services" should be interpreted as requiring an underlying lawsuit that brings a claim for the tort of disparagement, as understood under the relevant state law. See Microsoft Corp. v. Zurich Am. Ins. Co., No. C00-521P, 2001 WL 765871, at *3-4 (W.D. Wash. July 2, 2001); QSP, 773 A.2d at 917-18. In both of these cases, the courts found that the insurer was not required to defend an underlying antitrust suit because the insured could not be held liable for any disparagement tort under the law of the state of the underlying action due to the fact that the underlying plaintiffs did not allege they were victims of disparagement by the insured. See Microsoft Corp., 2001 WL 765871, at *5-6; QSP, 773 A.2d at 918.

The First Circuit, applying Massachusetts law concerning insurance policy interpretation, has adopted the same approach to determining whether the duty to defend arises under policies providing "personal injury" coverage for other torts. Faced with such a question, a court must compare the complaint and facts known to the insurer regarding the underlying action to the elements of the tort named in the personal injury coverage (as defined by the state law of the situs of the underlying action) to determine whether the underlying complaint is reasonably susceptible to an interpretation that it states or adumbrates a claim for that tort. See Global NAPs, 336 F.3d at 64-66 (finding that complaint could not be viewed as stating or adumbrating a claim for "malicious prosecution" because complaint could not be read as alleging special injury, an element required under state law of forum

for underlying action); OSF II, 307 F.3d at 16-19 (no duty to defend because complaint failed to state or adumbrate claim for "unfair competition" as defined under law of underlying action forum state). Massachusetts appellate courts have done the same in construing whether "personal injury" coverage applies to underlying lawsuits that are claimed to fall within policy coverage for defamation "offenses," finding that there is no duty to defend when an underlying suit does not allege that the insured published defamatory material about the underlying plaintiff, a requirement under defamation law.  See New England Tea & Coffee Co. v. Fireman's Fund Ins. Co., 763 N.E.2d 103, 103-04 (Mass. App. Ct. 2002); Transamerica Ins. Co. v. KMS Patriots, L.P., 752 N.E.2d 777, 781-82 (Mass. App. Ct. 2001).

The same rationale is equally applicable here, because the law of state of the underlying *Modesto* action, California, requires that a plaintiff seeking to recover for the tort of product disparagement, defined there as "trade libel," alleges that the defendant had made statements which were "of and concerning" the plaintiff.  See Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp.2d 1035, 1044-45 (C.D. Cal. 1998).  Thus, the *Modesto* plaintiffs here could not bring a claim for the tort of product disparagement against Riso because, as Riso admits, there never were and never could be any allegations that Riso disparaged any of the goods, products, or services of the *Modesto* plaintiffs.  See id.

Riso argues that this result would be inconsistent with Massachusetts law, specifically with the Massachusetts Supreme Judicial Court decision in Boston Symphony Orchestra v. Commercial Union Ins. Co., 545 N.E.2d 1156 (Mass. 1989), which it argues stands for the proposition that the word "disparage" in "personal injury" insurance coverage provisions should be given an ordinary meaning in common parlance, not the tort-based legal meaning that GAIC's construction would give

it.  Riso also says that this case makes inapposite the approach taken by the First Circuit, applying Massachusetts law, in construing other "personal injury" "offense" policy language that contains legal terms of art, such as "malicious prosecution" or "unfair competition," something which Riso argues "disparages" is not.  Riso's reliance on Boston Symphony is misplaced.

First, Riso overstates the import and meaning of the Boston Symphony decision and its applicability to the controversy here.  The decision does not appear to create the per se rule that Riso glosses it with–that in any and all constructions of "personal injury" policy provisions the words "disparage" should be given an ordinary, common parlance meaning.  Additionally, the court in Boston Symphony was construing different policy language, which it found to be ambiguous, that provided coverage for personal injury "arising out of . . . the publication or utterance of a libel or slander or of other defamatory [or] disparaging material."  Boston Symphony, 545 N.E.2d at 1157. Here, the policy language is more restrictive and non-ambiguous, covering injuries that arise out of "disparagement of a person or organization's goods, products, or services."   After the Boston Symphony decision, a Massachusetts appellate court was asked to interpret policy language nearly identical to that at issue here and recognized this distinction.  The court found policy language like that at issue here to be more restrictive than the language in Boston Symphony and thus found the Boston Symphony interpretation of the term "disparage" was not controlling.  See New England Tea & Coffee Co., 763 N.E.2d at 104.

More importantly, the Boston Symphony court's decision does not support the expansive construction of the policy language that Riso proffers, which would lead to coverage of any type of underlying action that involved any factual allegations of some type of "disparaging" (as that term is colloquially understood) conduct by the insured against some uninvolved third party.  Instead, reading

12

that case favorably to Riso but also in light of the reasonable expectations of an objective insured entering into a personal injury policy set forth above, <u>Boston Symphony</u> may be understood as finding a duty to defend where the underlying complaint has alleged some "disparagement," as the term is commonly understood, of the underlying plaintiff. The <u>Boston Symphony</u> court's holding that the insurer had a duty to defend under the "publication . . . of other defamatory or disparaging material" offense language rested in large part on the finding that the underlying plaintiff was making claims in her breach of contract suit – if not in the complaint, at least based on extrinsic facts known to the insurer – that the insured's wrongdoing in publicly cancelling her performance had *caused her* reputational harm in the community. <u>See</u> <u>Boston Symphony</u>, 545 N.E.2d at 1158-59. It is true that the <u>Boston Symphony</u> court rejected the insurer's argument that the "disparage" language should be read as having a meaning synonymous with the torts of product disparagement and disparagement of property, ruling instead that the policy language should be given an ordinary meaning. But the ground of the decision is narrower than Riso makes it out to be. The plaintiff in the underlying action against the Boston Symphony Orchestra was making a claim for damages *to her reputation*, though not explicitly asserting a cause of action for "disparagement" or "defamation." The court concluded the policy language should be understood to cover such a claim. The plaintiffs in the underlying *Modesto* case did not make such a claim, so even if the <u>Boston Symphony</u> case required a non-tort-based, common parlance, reading of GAIC's policy language, the expansion does not encompass the *Modesto* plaintiff's claims.

There is an additional reason why there was no duty to defend in this case. Even if I were to adopt the common parlance construction Riso proffers, the "personal injury" provisions would only give rise to the duty to defend here if the antitrust law economic injuries claimed by the plaintiff

consumers in the *Modesto* complaint were viewed as "arising out of" Riso's alleged disparagement of competitors' products. Such an expansive reading of the "arising out of" language is unjustified in this case. This provides further support for the conclusion that, at a minimum, the underlying case must involve some allegation of "disparagement" (however understood) of the underlying plaintiff by the insured.

In well-reasoned opinions, other courts that have been faced with identical policy language to that at issue here have rejected the same "arising out of" argument made by Riso. See QSP, 773 A.2d at 925-30; Purdue Frederick Co. v. Steadfast Ins. Co., No. 601345/04, 2005 WL 1662028, at *3-8 (N.Y. Sup. Ct. July 12, 2005). These courts all rejected arguments analogous to Riso's as reading the "arising out of" clause too broadly, explaining that this language in the "personal injury" definitions is meant to refer to the type of injury that is covered. As the QSP court explained:

> The term "arising out of" requires that we look at the injuries sustained by the [underlying] plaintiffs, rather than the underlying offenses that [the insureds] claim caused those injuries. As stated previously the [underlying] plaintiffs' injuries did not arise out of the covered offenses of defamation, disparagement, malicious prosecution or unfair competition, because the schools and youth groups making up the class of plaintiffs were not the parties injured by those offenses. The injuries alleged in the [underlying] action were economic injuries that arose out of monopolization of the . . . fundraising market by [the insureds]. We conclude that because there was no causal relationship between the [underlying] plaintiffs' injuries and the torts that [the insureds] claim caused those injuries, there is no duty to defend.

QSP, 773 A.2d at 930; see also Purdue, 2005 WL 1662028, at *6-8 (finding that the underlying plaintiffs' injuries – alleged to be damages caused by unfair competition violations in the form of paying higher prices – did not originate from, were not incident to, and had no connection with covered "offense" of "malicious prosecution").

14

Riso argues that the analysis applied in these decisions should be disregarded because it is not in step with the principles of Massachusetts law. This is an incorrect reading of Massachusetts law as compared with those decisions. The First Circuit summarized how the Massachusetts courts have construed the "arising out of" language in insurance policies in <u>Brazas</u>, 220 F.3d at 6-7. The term "arising out of" implicates what has been described as an intermediate causation standard–signaling a broader range of causation than proximate causation in tort law but requiring a higher showing than merely "but for" causation. <u>See id.</u> at 7. "Arising out of" is interpreted more broadly than the term "caused by," and is generally understood to mean "originating from," "growing out of," "flowing from," "incident to," or "having connection with." <u>See Brazas</u>, 220 F.3d at 6-7; <u>Bagley v. Monticello Ins. Co.</u>, 720 N.E. 2d 813, 816-17 (Mass. 1999). Additionally, the focus should be on the source of the underlying injury, not the theory of liability alleged in the complaint. <u>See id.</u> [<u>Brazas</u> and <u>Bagley</u>]. Although Riso takes issue with the courts' application of these principles in <u>QSP</u> and <u>Purdue</u>, the law applied in those cases was substantially similar to Massachusetts law on construing the term "arising out of." <u>See QSP</u>, 773 A.2d at 926 (under Connecticut law, the term "arising out of" is "very broad" and an accident or injury "arises out of" an enumerated offense when it "was connected with," "had origins in," "grew out of," "flowed from," or "was incident to" that offense; court should focus on the type of injury alleged by the underlying plaintiffs); <u>Purdue</u>, 2005 WL 1662028, at *1 (New York's interpretation of "arising out of" in general liability insurance contracts is broad, has broader significance than the words "caused

by," and is ordinarily understood to mean "originating from," "incident to," or "having connection

with"; court should focus on type of injury alleged by underlying plaintiffs).[6]

More importantly, in the *Modesto* complaint, the alleged disparagement – even if viewed in

the common parlance sense Riso proffers – does not meet the intermediate level of causation under

the Massachusetts "arising out of" standard.  Setting aside any third party's characterization of the

complaint, the complaint itself does not, as Riso argues, rely principally on disparagement allegations.

It is true that the complaint contains some factual allegations that Riso disparaged, in the broad

meaning of that word, the products of its competitors.  However, that disparagement was not the

injury for which the plaintiffs sought recovery.

This interpretation of what the "arising out of" language requires is also consistent with the

principle of Massachusetts law that the favored interpretation of an insurance policy is the one which

"best effectuates the main manifested design of the parties."  See Metropolitan, 793 N.E.2d at 1256.

Here, the chief manifested design of Riso and GAIC when entering into the "personal injury"

---

[6] Riso  argues that Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford, 152 F. Supp.2d 1026 (N.D. Ill. 2001), and its expansive construction of similar personal injury policy language to that at issue here, should govern this controversy.  In Knoll, the court held that the "arising out of language," when coupled with the court's concomitant conclusion that the "disparages" clause should be given a common meaning, required that an insurer provide a defense to an underlying suit alleging the insured violated RICO, the antitrust laws, and state fraud statutes because the complaint had some factual allegations that the insured had disparaged competitors' products and disparaged a scientist who criticized the defendants' products, which was alleged along with many other things to have played some part in causing the injuries alleged, higher prices for consumers.  See id. at 1030, 1034-39.  This case is not binding precedent and did not apply Massachusetts law, and I decline to follow its approach.  The Knoll court adopted its expansive interpretation of the "arising out of" language based on Illinois precedent which held that the term is broad and vague and thus should be liberally construed against the insurer.  Id. at 1035.  As discussed herein, this is not the position taken by the Massachusetts courts as to the "arising out of" term in insurance policy coverage provisions. Finally, I agree with the court in Purdue that the Knoll interpretation simply takes the "arising out of" definition too far.  See Purdue, 2005 WL 1662028, at *7.

16

coverage provisions of these commercial general liability policies was to provide coverage for tort claims by individuals against Riso arising from actions undertaken by it in the conduct of its business. To interpret the policy in the way Riso requests, it would then require coverage for any lawsuit in which the insured could argue that there were factual allegations either in the complaint or known to the insurer which tended to show that there may have been a covered "offense" against a third party not involved in the suit that could possibly be viewed as leading indirectly to the injury complained of by the underlying plaintiff. This result would actually run counter to the manifested design of the parties. See Microsoft Corp., 2001 WL 765871, at *3 (in addressing nearly identical policy language, rejecting insured's contention that duty to defend arose because the underlying antitrust complaint contained some factual allegations that insured made disparaging comments about non-plaintiff competitors).

For these reasons, I construe the policy language contested by the parties here as requiring that allegations in the underlying complaint (and other facts about the case known to the insurer at the time of tender of the defense) must be reasonably susceptible to an interpretation stating or adumbrating a claim of product disparagement, as that term is understood in the tort law of the forum of the underlying suit (here, California) or, at a minimum, a claim by the underlying plaintiff that they themselves were disparaged by the insured. Because the underlying complaint did not allege that Riso made any disparaging statements about the *Modesto* plaintiffs or their goods, products or services, Riso could not have been "legally obligated to pay" for a covered "personal injury" offense. Therefore, GAIC had no duty to defend.

17

**<u>Conclusion</u>**

For the foregoing reasons, I conclude that GAIC's motion for summary judgment (Dk. # 20) should be GRANTED and that Riso's motion for summary judgment (Dk. # 18) should be DENIED. Accordingly, declaratory judgment shall enter in favor of GAIC and against Riso in both actions declaring that (1) GAIC had no duty to defend Riso in the *Modesto* lawsuit and (2) GAIC had and has no duty to indemnify or reimburse Riso for any defense costs, judgment or settlement amounts, or any other liabilities incurred by Riso in defending the *Modesto* lawsuit.  In light of this ruling, Riso cannot maintain its claim that GAIC breached the subject policies by failing to defend and/or indemnify them and therefore judgment shall enter in favor of GAIC on Riso's Breach of Contract claim.

It is SO ORDERED.


March 31, 2006 _____                    \s\ George A. O'Toole, Jr.          
____
DATE                                                 DISTRICT JUDGE

18